# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed November 28, 1901.

SAMUEL W. BOWMAN

VS.

ROBERT FLANIGAN AND LOUISA G. FLANIGAN.

*Gans & Haman* for plaintiff.

*J. Alexander Preston, Carter Lee Bowie* and *Chapin Ferguson* for defendants.

DENNIS, J.—

On the 8th day of March, 1901, the plaintiff, together with one A. S. J. Gammon, entered into an agreement with the defendant, by which, in consideration of the sum of $150, they secured an option for ninety days for the purchase of 51 per cent. interest in certain letters patent for an invention by the defendants of improvements in bottle seals, for the sum of $11,000. Subsequently, on April 27th, 1901, the plaintiff and Gammon, both of whom are residents of Norfolk, Va., entered into an agreement with said defendant, "to form a corporation for the sale and manufacture of said patent bottle stoppers or caps, to which corporation the defendant should convey all his right,

title and interest in and to said letters patent, and in consideration therefor, the plaintiff and the said Gammon should convey to said Flanigan, forty-nine per cent. of the capital stock of the corporation so to be formed, and should also pay to said Flanigan the sum of $11,000." (See Bill of Complaint, par. 2; and plaintiff's exhibit "Examiner No. 1"). It was also agreed by parol, that $20,000 was to be raised as a working capital for said corporation. (Bowman's test'y).

Subsequently, the whole matter fell through, owing to Gammon's withdrawal from the transaction; and thereupon the plaintiff claims he entered into a new contract with the defendant, by which he—the plaintiff— was subrogated to all the rights of himself and Gammon, under the original agreement with the defendant; and it is this contract which he now seeks to have enforced by a decree for specific performance.

The corporation contemplated by the terms of the agreement has never been formed, nor has a dollar of stock been agreed to be taken, outside of a few indefinite promises, which bind the promisors to nothing; nor has the plaintiff paid out a dollar, in any way, in connection with the transaction, since he entered into the new contract of subrogation.

Now, assuming for the sake of the argument, that, when the contract between the original parties was declared off through inability to carry through the scheme, the plaintiff, by a new agreement between himself alone and the defendant, became entitled to all the rights of the original parties to the agreement with the defendant, which is the theory of his case, I still do not think it is a case in which specific performance of the contract can be decreed.

It is a principle well settled by our Court of Appeals that the specific performance of a contract will not be decreed by a court of equity, where there is not mutuality; by which, I do not mean the mutuality of obligation which is necessary to make every contract valid, but mutuality as respects *enforceability*. In other words, broadly stated, a court of equity will not enforce by a decree of specific performance a contract in favor of one party, where it would not enforce the same

contract in favor of the other party, if he sought its enforcement by reason of the failure to perform the stipulations therein contained in favor of himself, in other words, it must be equally enforceable in favor of, and against each party.

Now, applying this principle to the case at bar, and assuming, as I have assumed, the complete subrogation of the plaintiff to all the rights of his original co-contractors under the contract, how does the case stand? Suppose Flanigan had filed his bill, asking a specific performance against the plaintiff; how could he possibly get relief.

No court will decree a performance that it cannot enforce; and how could this court enforce an agreement that the plaintiff should secure an act of incorporation, and cash subscriptions to its stock? Whether he can get an act of incorporation or not is a question beyond his absolute control, and so is the subscription to stock by others, and this court would be powerless to compel him to secure either result.

As it cannot enforce the contract against him, if he should seek to avoid it, neither will it enforce it in his favor against the other party.

The suggestion of the learned counsel for the plaintiff that the decree could be drawn compelling the defendant to carry out the stipulations made by him, *upon condition* that, *within some period*, to be *fixed* by the *court*, the plaintiff should secure the act of incorporation, and the necessary subscriptions to the stock, fails to meet the question. In the first place, if the court should fix a time in which these matters should be performed, it would be imposing a condition in the contract which the parties themselves never agreed to; secondly, it would be wholly inequitable, as it would leave it wholly to the option of the plaintiff to comply or not with these conditions, while, in the meanwhile, the defendant would be wholly tied up in any deals which he might be contemplating; and, thirdly, it would not answer at all the argument against the inherent unforceability of such a contract as the one in question.

There are few contracts which a court could not, by imposing such or similar conditions enforce; but it is manifest that the very moment the aid

of the court is asked to impose conditions, it is asked to introduce terms into the contract to which the parties never agreed. If not mutually enforceable in the first instance, the court will not remedy the defect by making conditions in the decree, which will bind one party and leave the other free, at his option.